INQUIRY COMMISSION, Movant,

v.

Stephen P. ROBEY, Esq. Respondent.

No. 2005–SC–000573–KB.

Supreme Court of Kentucky.

Sept. 22, 2005.

Linda Gosnell, Chief Bar Counsel, Kentucky Bar Association, Frankfort, KY, Counsel for Movant.

Gardner L. Turner, Sturgill, Turner, Truitt, Lexington, Steve P. Robey, Providence, KY, Counsel for Respondent.

## OPINION AND ORDER

The Inquiry Commission requests that Respondent Stephen P. Robey, KBA Member No. 59230, whose last known address is 508 East Main Street, Providence, KY 41450, be temporarily suspended from the practice of law in the Commonwealth of Kentucky as there is probable cause to believe, pursuant to SCR 3.165(1)(d), that Respondent is addicted to intoxicants or drugs and does not have the physical or mental fitness to continue to practice law. The Inquiry Commission states, further, that there is probable cause to believe, pursuant to SCR 3.165(1)(b), that Respondent poses a substantial threat of harm to his clients or to the public.

The Respondent is currently under indictment in the Hopkins Circuit Court having been charged with three counts of First Degree Wanton Endangerment, one count of DUI, one count of First Degree Traffickiing in a Controlled Substance, one

count of Third Degree Possession of a Controlled Substance, and one count of Possession of Drug Paraphernalia. The indictment issued September 28, 2004 as a result of an August 12, 2004 automobile accident.

The Respondent is also under indictment in the Webster Circuit Court having been charged with having a Controlled Substance not in Original Container, one count of Second Degree Possession of a Controlled Substance, and three counts of Third Degree Possession of a Controlled Substance. The indictment and arrest warrant issued October 21, 2004 [1], were obtained by Sgt. Todd Jones of the Kentucky State Police after Sgt. Jones arrested Respondent on the September 28, 2004 Hopkins County arrest warrant and discovered the drugs and related items on the Respondent's person. Sgt. Jones, having known Respondent for approximately seventeen years, observed that the Respondent's speech was slow and halting and that his movements were slower than normal.

On October 30, Sgt. Jones, in his affidavit to the Inquiry Commission, stated he observed the Respondent drive slowly past his house and the house of his neighbor, Tony Fletcher, a suspected drug trafficker. Sgt. Jones said he was off duty, but followed the Respondent to Fletcher's house. He also stated he had heard a rumor that the Respondent and his girlfriend had been purchasing illegal drugs at Fletcher's house. When he arrived at Fletcher's house, he stated the Respondent appeared to be impaired and under the influence of an intoxicant; the female passenger in the Respondent's car was extremely impaired and incoherent. The Respondent assured Sgt. Jones that he would not be driving.

The Respondent was charged on June 8, 2005, in Webster District Court, of two charges of Theft by Deception stemming from the passing of two worthless checks; one in the amount of $24.29 to the Webster County Clerk's Office on January 26, 2005 and one in the amount of $125.75 to Redwood Market on April 11, 2005. The Respondent was provided written notice to pick up both checks, which he failed to do.

On February 3, 2004, the Respondent was appointed Executor of the Estate of Edna Emma Miller in Webster District Court. The Respondent filed an Inventory on March 22, 2004, and took no further action to finalize the estate. The Respondent was removed as Executor of the Estate after refusing to finalize the estate or respond to repeated inquiries from the heirs requesting information about the estate.

The Respondent obtained the client file for Mr. Van Nabb when he agreed to cover an associate's cases during her prolonged medical leave in May—June of 2004. Mr. Nabb stated in his affidavit to the Inquiry Commission that, while in the possession of his file, the Respondent failed to return Mr. Nabb's phone calls and was not keeping regular office hours and that the Respondent was exhibiting erratic behavior.

Kenneth Shouse retained the Respondent to represent him in a criminal matter in Union Circuit Court. Mr. Shouse spoke with the Respondent on April 12, 2005, and advised him that he would have a preliminary hearing on April 14, 2005. At that time, Mr. Shouse paid the Respondent a retainer fee. The Respondent failed to appear in court for the preliminary hearing with Mr. Shouse after agreeing to be there. Mr. Shouse testified to this at his preliminary hearing.

---

1. The October 21, 2004 indictment and arrest warrant was served on October 21, 2004.

The Respondent was retained to represent Stephen and Dee Watson as a result of injuries suffered by Mr. Watson in an automobile accident. On February 27, 2004, the Respondent filed a civil action in Lyon Circuit Court on behalf of Mr. Watson. The Respondent filed an Amended Complaint on March 1, 2004, and thereafter failed to take any further action in the case. The case was dismissed on May 2, 2005 after the Respondent failed to answer interrogatories served on April 7, 2004, failed to appear for the first status conference on January 6, 2005, failed to comply with an Order to Compel entered January 7, 2005, failed to appear at a hearing on the Defendant's Motion for Sanctions and the second status conference on April 4, 2005, and failed to appear at or cancel a mediation held on April 14, 2005.

In February of 2005, Benjamin Cruce retained the Respondent to represent him in a criminal matter in the Henderson Circuit Court. Mr. Cruce paid the Respondent approximately $2300.00 for his representation. Thereafter, the Respondent failed to appear in court with Mr. Cruce on three separate occasions, including January 3, 2005, February 7, 2005, and May 9, 2005. During the representation, the Respondent failed to file a Motion to Reduce Bond on behalf of Mr. Cruce, despite being requested to do so. Mr. Cruce was also unable to reach the Respondent by telephone. The Respondent refused to refund any of the approximately $2300.00 paid by Mr. Cruce, despite requests to do so. Mr. Cruce's mother stated in her affidavit to the Inquiry Commission that a public defender was appointed to represent her son at one of his hearings as a result of the Respondent's absence and that the Respondent never notified her son of his need to be absent.

On June 8, 2005, the Office of Bar Counsel received a Client's Security Fund Application sworn to by Dorothy Miers, one of the Respondent's Clients. Ms. Miers asserts that she paid the Respondent $5000.00 on February 18, 2005, to represent her. He advised her that he would appear in court with her, and he never appeared. She went to his office to request a refund, but he would not return her money. She also notes that the Respondent's phone has been cut off.

After becoming aware of certain of these criminal matters and client complaints, due to information that has been provided regarding the Respondent's substance abuse issues, the Office of Bar Counsel communicated with the Respondent through a series of letters, asking whether he would be willing to address his substance abuse issues and agree to allow the Office of Bar Counsel to communicate with KYLAP regarding his substance abuse problem. According to the Inquiry Commission's Petition, the Office of Bar Counsel had hoped that the Respondent was aggressively addressing any substance abuse issues that he may have, and that proof he had seriously and aggressively participated in rehabilitation would allow the Inquiry Commission to forego temporary suspension proceedings.

In letters dated May 27, 2005 and June 17, 2005, the Office of Bar Counsel asked whether the Respondent would be willing to communicate with KYLAP and allow the Office of Bar Counsel to communicate with KYLAP in an effort to address his substance abuse issues. The Office of Bar Counsel further questioned whether the Respondent entered into a monitoring agreement with KYLAP, had attended any rehabilitation program, and would be willing to provide releases permitting the Office of Bar Counsel to review and use treatment records in disciplinary or temporary suspension proceedings and to use

KYLAP records in disciplinary or temporary proceedings.

In response to the letters from the Office of Bar Counsel, the Respondent signed releases permitting the Office of Bar Counsel to review and use his medical records and KYLAP records in disciplinary or temporary suspension proceedings. He also enclosed a report dated February 8, 2005, from a drug counselor, Lawrence Peyton, indicating that he had been drug and alcohol free since September 15, 2004, and that the Respondent had tested negative on a seven-panel drug test on January 27, 2005. In his letters to the Office of Bar Counsel, dated June 3, 2005 and June 21, 2005, the Respondent asserted that he went through a "complete drug evaluation, and this year successfully completed the recommended twelve week program for rehabilitation." He also stated that he had attended weekly NA and AA meetings.

The Office of Bar Counsel obtained the Respondents's records from New Horizon's Counseling and KYLAP. According to the New Horizon records obtained by the Office of Bar Counsel, the Respondent completed twelve weeks of outpatient counseling. The treatment contract indicated that the twelve week program was required as a result of his conviction for DUI, First Offense. He was also required to attend AA or NA meetings twice a week and obtain an AA or NA sponsor within thirty days. The Respondent advised the Office of Bar Counsel of the identity of two individuals, both volunteers with KYLAP, who he alleged were his sponsors.

The Respondent filled out a questionaire, wherein he described methamphetamines as his favorite drug and indicated that he has used marijuana, cocaine, crack, methamphetamine, and amphetamines. He also indicated that he did not abuse prescription drugs. Mr. Peyton's notes indicate that the Respondent met with him on approximately twelve occasions. Throughout the treatment, the Respondent completed a written analysis of three steps of this twelve step program. Mr. Petyon's notes further reflect that on October 26, 2004, the Respondent told Mr. Peyton that he had not used drugs since September 15, 2004. On November 9, 2004, the Respondent reported to Mr. Peyton the identity of one of the individuals he claimed were his sponsors. On November, 30, 2004, the Respondent reported that he "was around cocaine," but that he did not use any. Mr. Peyton advised him that that was very risky behavior. Mr. Peyton's notes from January 22, 2005, reflect that both of the identified KYLAP volunteers attended the Respondent's session with him, agreeing to be his twelve-step sponsors. On March 9, 2005, Mr. Peyton's notes reflect that the Respondent "has completed all of his treatment goals and has completed his outpatient program."

Although the Respondent has indicated that he has participated in a rehabilitation program and that he has not used drugs since September of 2004, and his records from New Horizons Counseling seem to corroborate his statements, the totality of the evidence together with the records received from KYLAP indicate that the Respondent has not aggressively sought treatment, has not taken his treatment seriously, and has significant ongoing problems that affect his ability to represent his clients.

The Respondent's KYLAP records indicate that there were several misrepresentations in the Respondent's records from New Horizons. For example, the Respondent admitted to KYLAP representatives that he was taking non-prescribed Valium on a daily basis. Further, on December 15, 2004, the Respondent indicated to a KYLAP representative that he had been off drugs for a period of weeks rather than

the September 15, 2004, date that had been given to the counselor at New Horizons. The KYLAP records also reflect that the Respondent avoided attending meetings, that the Respondent is still surrounding himself with "druggie" clients and friends, and that he may be living with a "well-known addict." Finally, and perhaps most tellingly, the Respondent reported to KYLAP (as well as New Horizons) that one of the KYLAP volunteers was his twelve-step sponsor. According to the KYLAP records, this particular volunteer has vehemently denied this assertion, saying that he has not heard from the Respondent in some time. There is no indication from the KYLAP records that either KYLAP volunteer had ever attended a New Horizons Counseling session with the Respondent, or that they had ever been successful in getting the Respondent to attend a single AA or NA meeting.

Although the Respondent indicated in his June 21, 2005, letter to the Office of Bar Counsel that he would immediately contact a local KYLAP member to enter into a monitoring and oversight agreement with KYLAP, the Respondent's KYLAP records indicate that he did not request such an agreement until July 6, 2005. A blank agreement was forwarded to him on July 13, 2005. However, as of July 20, 2005, the Respondent has not signed and returned that agreement.

Although the Respondent has asserted that he has refrained from using drugs since September 15, 2004, the majority of the evidence discussed herein and relating to the Respondent's criminal and client issues arises from the Respondent's conduct since that time, indicating that the Respondent is being less than truthful in his assertion.

Thus, there is probable cause to believe pursuant to SCR 3.165(1)(b) and SCR 3.165(1)(d), that Respondent continues to pose a substantial threat of harm to his clients or to the public, and that he is currently addicted to intoxicants or drugs and does not have the physical or mental fitness to continue to practice law.

The Respondent has failed to file a timely response to the Inquiry Commission's petition, and finding probable cause exists, we hereby grant the petition for temporary suspension in accordance with SCR 3.165(1)(b) and SCR 3.165(1)(d).[2]

Accordingly, it is hereby ORDERED that:

1. The Respondent, Stephen P. Robey, is temporarily suspended from the practice of law in the Commonwealth of Kentucky pending further orders from this Court.

2. Disciplinary proceedings against the Respondent shall be initiated by the Inquiry Commission pursuant to SCR 3.160, unless already begun or unless the Respondent resigns under terms of disbarment.

3. Pursuant to SCR 3.165(5), the Respondent shall within twenty (20) days of the date of entry of this order notify all clients in writing of his inability to continue to represent them and shall furnish copies of such letters of notice to the Director of the Kentucky Bar Association.

4. Pursuant to SCR 3.165(6), the Respondent shall immediately, to the extent reasonably possible, cancel and cease any legal practices advertising activities in which he is engaged.

All concur.

---

**2.** The Respondent filed a Motion for Extension/Expansion of Time to File Response to Petition For Temporary Suspension on August 30, 2005 which was denied August 31, 2005 by an Order of this Court.